```
            UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE,                      )
      Plaintiff,               )
                               )
              v.               )  C.A. NO. 15-30192-MAP
                               )
WESTERN NEW ENGLAND            )
UNIVERSITY, ET AL.,            )
      Defendants.              )
```

### MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS
(Dkt. Nos. 30 & 54)

January 10, 2017

**PONSOR, U.S.D.J.**

Plaintiff, a former student at Defendant Western New England University ("WNEU") -- proceeding under the pseudonym John Doe -- has filed a twelve-count[1] complaint against WNEU and eight university employees, seeking damages and equitable relief in connection with his two-year suspension for sexual misconduct.

In response, Defendants have filed a Motion to Dismiss the complaint in its entirety. (Dkt. No. 30). The motion was referred to Magistrate Judge Katherine A. Robertson for a Report and Recommendation.

Judge Robertson's Report and Recommendation (Dkt. No. 54) advises that Defendants' motion to dismiss should be

---

[1] The complaint titularly contains Counts I through XIII, but it omits any denominated Count XII.


allowed, except as to three elements of the complaint: a portion of Count I, which generally alleges breach of contract; a portion of Count II, which generally alleges a breach of the covenant of good faith and fair dealing; and misnumbered Count XIII, which seeks declaratory relief.  In all other respects, including the bulk of the claims offered under Count I and Count II, the Report suggests that the motion to dismiss should be allowed.

Both Plaintiff and Defendants have filed objections to the Report and Recommendation in accordance with the timetable set forth in the Magistrate Judge's memorandum. For the reasons set forth below, these objections are unpersuasive.  As a result, on de novo review, the court will adopt the Report and Recommendation and allow the motion to dismiss the complaint, in part.

It is not necessary to repeat the essential facts; they are scrupulously recited in the Report and Recommendation and, for purposes of the motion to dismiss, largely undisputed.  The Report and Recommendation is attached for reference.

Plaintiff does not protest the Report's recommendation that most of his claims be dismissed.  He objects only to dismissal of two counts: Count VII, which seeks damages for common law intentional infliction of emotional distress; and

Count XI, which seeks damages for violation of Title IX. Though vigorously asserted, neither of these objections has traction.

With regard to Count VII, the Report correctly concludes that, even accepting all the allegations of the complaint, Defendants' behavior would not, as a matter of law, rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress.  This conclusion is well supported, both by general authorities detailing the standards for a claim of this sort, and by specific cases involving precisely the disciplinary context the parties confront here.  (Dkt. No. 54 at 43-44.)

Plaintiff's arguments in support of his objection to the dismissal of Count XI are similarly unavailing.  Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88, is a federal statute barring gender-based discrimination in federally supported educational institutions.  As the Report points out, a claim may be offered pursuant to Title IX only where non-speculative evidence exists of discrimination based on sex.  See, e.g., Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994).  Here, the complaint offers no sufficient evidence -- indeed, no evidence of any kind beyond conjecture -- supporting a claim that

discrimination on the basis of gender was a motivating factor in Defendants' decision to suspend Plaintiff. As the Report and Recommendation notes, numerous courts have dismissed claims for violation of Title IX in the face of allegations substantially identical to those offered here. (Dkt. No. 54 at 44-52.) Analogous cases denying motions to dismiss Title IX claims cite far more compelling facts.

Defendants' objections to the Report and Recommendation similarly fall short, but require more discussion. A summary of the facts that are undisputed at this stage is necessary to make the basis for the court's ruling clear.

The triggering incident, a sexual encounter between Plaintiff Doe, a male, and a female fellow student -- referred to in this litigation as Loe –- occurred on the night, and during the early morning hours, of September 26-27, 2014. At that time, the only applicable standards governing claims of sexual misconduct by a student were set forth in the Student Code of Conduct contained in WNEU's 2014-2015 Handbook. Sexual misconduct was defined in the Handbook as "any form of physical contact or exploitation of another person of a sexual nature that is made without effective consent." (Dkt. No. 54 at 18.) Consent is effective when "a person is able to make free, informed, and reasonable choices and decisions -- and is not impaired by

4

intoxication or other drug consumption . . . by disability, or by fear." (Id. at 19.)  The Handbook states, in bold type, that consent is effective "when it has been clearly communicated.  Consent may never occur if a person is unconscious, unaware, or otherwise physically helpless." Id.

The undeveloped facts that led -- nine months after the incident -- to the charges of misconduct against Plaintiff may be summarized crudely as follows.  The word "crudely" is used in both senses.  It is distasteful to have to get into these details but unfortunately necessary.

Doe and Loe met at a party.  They consumed some alcohol, but not enough to be impaired.  They went to Doe's room, ostensibly to watch a movie.  They began kissing.  By mutual consent, they both removed all their clothing.  Loe said she did not want to have penile-vaginal intercourse, and Doe respected this.  By mutual consent, they began performing oral sex on each other.  At some point, Loe said she did not want to continue this, and Doe stopped.  At this point, Doe's and Loe's versions of what happened appear to diverge slightly.  According to Doe, he asked Loe to "finish him off" so that he would not be left with "blue balls."  She then masturbated him to ejaculation.  (Id. at 5.) According to Loe, Doe said, "Now you have to finish me off,"

placed her hand on his penis, and held it there until he ejaculated. (Id.)  It is undisputed that Loe never explicitly voiced any disinclination to masturbate Doe or tried to pull her hand away.

Based on this incident, Defendants eventually informed Plaintiff that he was being charged with two violations of Article III-A of the 2014-2015 Handbook's Student Code of Conduct.  Plaintiff prepared his defense to the charges based on this disclosure.

Eventually, WNEU's Conduct Review Board (CRB), the quasi-judicial entity responsible for weighing the charges and determining the sanction, found Plaintiff had committed the violations and suspended him for two years.  The crucial factual tipping point was that the CRB found Loe's version of the facts -- that Doe said, "now you have to finish me off," before placing her hand on his penis -- more credible than Doe's version, which was that he first said, "Could you at least finish me off?"  (Id. at 11.)

Now the analysis reaches its key moment.  In issuing its November 2015 sanction letter, the CRB relied not on the provisions of the applicable 2014-2015 Handbook, but on language contained in its Title IX policy.  It is undisputed that this policy was not in effect in September 2014 when Doe and Loe had their fateful encounter.

Defendants argue vehemently that the CRB's reference to the Title IX policy has no bearing on the motion to dismiss, since both the 2014-2015 Handbook and the Title IX policy prohibit coerced sexual conduct of any kind and both define coerced sex as sex without consent.

The problem with this argument is that the Title IX policy defines what constitutes coerced sex significantly more broadly than the Handbook.  The Title IX policy, but not the Handbook, states that "[a]nything but a clear, knowing and voluntary consent to any sexual activity is equivalent to a 'no.'" (Id. at 11.)  The CRB concluded that, in the absence of clear and voluntary consent, the masturbation was non-consensual and therefore coerced.  Id.

The emphasis in the Handbook is very largely on the condition of the participants, their state of impairment, and their ability to make reasonable judgments.  The demand in the Title IX policy of clear, knowing and voluntary consent, it might well be argued, takes the standard a step beyond that.  It appears to require a higher degree of explicitness for consent to be effective than may often be found even in wholly voluntary encounters.

Reasonable people may debate which standard is preferable.  It cannot fairly be denied, however, that the Title IX standard demanded more than the Handbook required.

7

Defendants concede that the Title IX policy was not in effect at the time of Plaintiff's alleged misconduct and was therefore inapplicable.  Meticulous adherence to definitional boundaries and notification requirements regarding what constituted consent and coercion was especially critical in determining whether discipline was appropriate on this record's factual landscape.  Certainly, Judge Robertson was correct in concluding that, at a minimum, Plaintiff is entitled to discovery before losing his day in court on this issue.

For the foregoing reasons, upon de novo review, the court hereby ADOPTS the Report and Recommendation (Dkt. No. 54) in its entirety.  Defendants' Motion to Dismiss (Dkt. No. 30) is hereby ALLOWED, except as to the portions of Counts I and II identified in the Report and Recommendation and as to Count XIII.

This case is hereby referred to Magistrate Judge Robertson for a scheduling conference pursuant to Fed. R. Civ. P. 16.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge